IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-02568-CMA-BNB

THE WELLINGER FAMILY TRUST 1998;
JULIE WELLINGER, trustee, and
JULIE WELLINGER, individually,

Plaintiffs,

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, a Connecticut insurance
company,

Defendant.

---

## ORDER

---

This matter arises on **Plaintiffs' Motion to Compel Hartford to Produce Relevant Privilege Log Item** [Doc. # 81, filed 5/2/2013] (the "Motion to Compel"), which is DENIED.

The Motion to Compel concerns a two page document described in the privilege log as having been prepared by a paralegal in Hartford's legal department and as including "[h]andwritten notes re: portability, conversion, continuation, suicide exclusion, and situs of the Policy (Colorado versus Texas), and citation to C.R.S. § 10-7-109."  Motion to Compel [Doc. # 81] at p. 3 (the "disputed document").  Hartford claims in its privilege log that the disputed document is subject to the attorney-client privilege and the work-product doctrine and need not be produced in discovery.  Id.

I.  Applicable Law

The plaintiffs' Amended Complaint includes four claims for relief.[1]  The Fourth Claim is made under "ERISA, 29 U.S.C. §1132 for Hartford's Obligation to Provide Continued Coverage, and Breach of Contract for the Required Life Insurance Coverage."  The remaining claims are asserted under state law, alleging breach of contract and willful and wanton breach of contract (First Claim); bad faith (Second Claim); and "In the Alternative, For Life Insurance Death Benefits, $250,000, Based on Coverage Effective as of August 28, 2008" (Fifth Claim).

Where, as here, there is a claim of attorney-client privilege, I must determine whether federal or state law governs the existence of the claimed privilege.  In this case, federal law provides the rule of decision with regard to the ERISA claim.  Consequently, the federal law of attorney-client privilege applies with respect to the ERISA claim and "where the evidence sought also may be relevant to pendent state law claims."  Atteberry v. Longmont United Hospital, 221 F.R.D. 644, 646-47 (D. Colo. 2004).  By contrast, and "[u]nlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)."  Frontier Refining Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 702 n.10 (10th Cir. 1998)(internal quotation omitted).  Consequently, in this case I look to federal law with respect to both the attorney-client privilege and the work product immunity.

---

[1]The Amended Complaint originally included five claims.  The plaintiffs' Third Claim, for violation of C.R.S. § 10-3-1115, was dismissed with prejudice on February 5, 2013.  Order [Doc. # 56].

## II.  Work Product Immunity

Rule 26(b)(3) does not protect from discovery materials prepared in the ordinary course

of business; rather, it applies only to materials prepared "in anticipation of litigation or for trial."

Weitzman v. Blazing Pedals, Inc., 151 F.R.D. 125, 126 (D. Colo. 1993).  Thus, to sustain a claim

of work product immunity, Hartford "must demonstrate that the documents at issue were

prepared in anticipation or litigation by or for [Hartford] or by or for [Hartford's]

representative."  Wikel v. Wal-Mart Stores, Inc., 197 F.R.D. 493, 495 (N.D. Okla. 2000); accord

Pepsico, Inc. v. Baird, Kurtz & Dobson LLP, 305 F.3d 813, 817 (8th Cir. 2002) (stating that "[i]n

order to protect work product, the party seeking protection must show the materials were

prepared in anticipation of litigation, i.e., because of the prospect of litigation").  As the court

noted in Wikel, however:

> [M]embers of society tend to document transactions and
> occurrences to avoid the foibles of memory and to perpetuate
> evidence for the resolution of future disputes.  And because
> litigation is an ever-present possibility in American life, it is more
> often the case than not that events are documented with the general
> possibility of litigation in mind.  Yet, the mere fact that litigation
> does eventually ensue does not, by itself, cloak materials with
> work product immunity.

197 F.R.D. at 495 (internal quotation omitted).

Moreover, "[i]f the investigation . . . would normally be undertaken, an investigative

report developed in the ordinary course of business will not be protected as work product."  Id.

This is particularly true where the documents were prepared by an insurance company.  A

substantial part of an insurance company's business is investigating claims and handling appeals

of claims determinations.  Consequently, those activities are a part of the normal business

activity of Hartford, and reports prepared or used in connection with those ordinary business

3

activities are not protected from disclosure under the work product doctrine.[2]  See Thomas Organ Co. v. Jadranska Slobodno Plovidba, 54 F.R.D. 367, 373-74 (N.D. Ill. 1972).

Under these facts, I find that the disputed document was not prepared in anticipation of litigation and is not subject to the work product immunity.

III.  Attorney-Client Privilege

The disputed document was provided to me for an *in camera* review, and I have completed that review.  It is apparent on its face that the disputed document contains a legal analysis of the facts of this case and the provisions of the insurance policies at issue.  It contains the author's mental processes and impressions.

In the corporate context, the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."  Upjohn Co. v. United States, 449 U.S. 383, 390 (1981).  In addition, the attorney-client privilege "protects from forced disclosure any communication from an attorney to his client when made in the course of giving legal advice. . . ."  Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1370 (10th Cir. 1997).  There is no requirement that "the communication[] must contain confidential matters revealed by the client earlier to the attorney."  Id. at 1371.

The plaintiffs argued at the hearing that the disputed document is not privileged based on "at issue" waiver.  In Frontier Refining, 136 F.3d at 700, the Tenth Circuit Court of Appeals recognized that "reliance upon a defense of advice of counsel has, in some circumstances, been

_____

[2]  Hartford's counsel conceded at argument that the results of the analysis contained in the disputed document were provided to Hartford's appeal specialist who rejected the plaintiffs' appeal of Hartford's coverage decision.

held to constitute a waiver of the attorney-client privilege."  Such a waiver may be found to have

occurred under the following circumstances:

> The attorney client privilege may also be implicitly waived, and
> one way that is done is by raising attorney advice as a defense.
> During his opening statement and his questioning of Levad
> [defendant's former counsel], Workman's trial counsel placed
> Levad's advice in issue by asserting that Workman had relied on
> the advice in cashing the checks.  Workman cannot selectively
> assert the privilege to block the introduction of information
> harmful to his case after introducing other aspects of his
> conversations with Levad for his own benefit.  The attorney client
> privilege cannot be used as both a shield and a sword, and
> Workman cannot claim in his defense that he relied on Levad's
> advice without permitting the prosecution to explore the substance
> of that advice.

United States v. Workman, 138 F.3D 1261, 1263-64 (8th Cir. 1998) (internal citations omitted).

Accord FDIC v. Wise, 139 F.R.D. 168, 172 (D. Colo. 1991) (holding that the FDIC waived

asserted privileges, including the attorney-client privilege, by repeatedly injecting into the case

the actions, knowledge, and beliefs of its bank regulators, and stating:  "[W]e are persuaded that

defendants' ability to test these allegations by reviewing the regulatory documents is vital to

their defense.  Since the FDIC affirmatively placed this information at issue, allowing it to assert

privileges to protect against disclosure of these documents would be manifestly unfair to

defendants").  Thus, "[w]here a party injects part of a communication as evidence, fairness

demands that the opposing party be allowed to examine the whole picture."  Remington Arms

Co. v. Liberty Mutual Ins. Co., 142 F.R.D. 408, 413 (D. Del. 1992).

In this case, to the contrary, Hartford has not voluntarily injected the advice of its counsel

as evidence.  The only reason the disputed document has come to light is Hartford's compliance

with its obligation to list it on its privilege log and to provide sufficient information in the log to

allow plaintiffs' counsel and the court to assess the asserted privilege.  Consequently, I find that

Hartford has not waived the attorney-client privilege by putting the advice of its legal department

at issue in the case.

Finally, the plaintiffs argue that they are entitled to obtain the disputed document under

the fiduciary exception to the attorney-client privilege.  The plaintiffs rely on <u>Smith v. Jefferson</u>

<u>Pilot Financial Ins. Co.</u>, 245 F.R.D. 45 (D. Mass. 2007), in support:

> This [fiduciary] exception to the attorney-client privilege is rooted
> in English trust law, but has since been applied to numerous
> fiduciary relationships, including those existing in the ERISA
> context.  As applied in the ERISA context, the fiduciary exception
> provides that an employer acting in the capacity of ERISA
> fiduciary is disabled from asserting the attorney-client privilege
> against plan beneficiaries on matters of plan administration. . . .
>
> The fiduciary exception is rooted in two distinct rationales.  First,
> some courts have held that the exception derives from an ERISA
> trustee's duty to disclose to plan beneficiaries all information
> regarding plan administration.  These courts reason that an ERISA
> fiduciary has an obligation to provide full and accurate information
> to the plan beneficiaries regarding the administration of the plan,
> including any communications with an attorney that are intended
> to assist in the administration of the plan.  Consequently, the
> fiduciary cannot use the attorney-client privilege to narrow the
> fiduciary obligation of disclosure owed to the plan beneficiaries.
> Other courts have focused instead on the role of the trustee and
> have endorsed the notion that, as a representative for the
> beneficiaries of the trust which he is administering, the trustee is
> not the real client in the sense that he is personally being served.
> Under this line of reasoning, when an attorney advises a plan
> administrator or other fiduciary concerning plan administration,
> the attorney's clients are the plan beneficiaries for whom the
> fiduciary acts, not the plan administrator.  Thus, the very intention
> of the communication is to aid the beneficiaries and the fiduciary
> cannot subordinate the fiduciary obligations owed to the
> beneficiaries to their own private interests under the guise of
> attorney-client privilege.
>
> Under either rationale, however, the courts have determined that

the fiduciary exception does not defeat the attorney-client privilege with respect to communications between a fiduciary and its attorneys on non-fiduciary matters.  In particular, courts have found that, when an ERISA trustee seeks legal advice for his own protection, the legal fiction of trustee as representative of the beneficiaries is dispelled and therefore the fiduciary exception is not applicable.  Therefore, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries  . . . the attorney-client privilege remains intact.

In order to determine whether a particular attorney-client communication concerns a matter of plan administration or seeks legal advice for the fiduciary's own benefit, courts engage in a fact-specific inquiry, examining both the content and context of the specific communication.  Frequently, the key question is whether the communication was made before or after the final decision to deny benefits.  That is because after the challenged benefits determination occurs, there should be little need for administrators to consult counsel regarding a specific benefits determination.

Id. at 47-48 (internal citations and quotations omitted).

The plaintiffs' argument under the fiduciary exception to the attorney-client privilege-- that Hartford was acting as an ERISA fiduciary between April 21 and June 10, 2010, when the disputed document was created--is built of a false premise.  First, although the plaintiffs assert in paragraphs 59 and 60 of their Amended Complaint that Jeffrey Wellinger was a participant in an employee welfare benefit plan for life insurance coverage subject to ERISA and that Hartford was a "Plan Fiduciary," the plaintiffs also allege at paragraph 69 that the insurance coverage sought through this lawsuit "was not expected to be and is not considered an employee benefit plan under ERISA."  Amended Complaint [Doc. # 27] at ¶¶59-60 and 69.  In addition, it is undisputed that Mr. Wellinger ceased to be covered under an ERISA insurance policy on or before September 26, 2008,  the date he was no longer actively at work at STMicroElectronics,

Inc.  Motion for Summary Judgment [Doc. # 60] at ¶¶8, 22; Response [Doc. # 77] at pp. 3, 22.[3]

Consequently, Mr. Wellinger's coverage under the ERISA policy ended long before the period

of time from April 21 through June 10, 2010, when the disputed document was prepared.

Hartford was not acting as an ERISA fiduciary when the disputed document was created.

The fiduciary exception to the attorney-client privilege does not apply under the facts of this

case.

IV.  Conclusion

IT IS ORDERED that the Motion to Compel [Doc. # 81] is DENIED.

Dated June 5, 2013.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

---

[3]Hartford contends Mr. Wellinger was no longer actively at work at STMicroElectronics, Inc., on September 26, 2008, while the plaintiffs claim he was no longer actively at work on August 23, 2008.  Either way, his coverage under the ERISA policy ended long before the disputed document was prepared.